(No. 4914 )

E. H. MARHOEFER, JR., CO., AN ILLINOIS CORPORATION, Claimant,
vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 28, 1965.*

HEALY, NEWBY, BARRETT AND HEALY, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LESTER SHAPIRO AND ERWIN H. GREENBERG, Special Assistant Attorneys General, for Respondent.

PERLIN, C.J.

This action was instituted by claimant, E. H. Marhoefer, Jr., Co., an Illinois corporation, for damages in the sum of $493,544.88 resulting from alleged unreasonable delays in completion of a construction contract, which was awarded to claimant by the State of Illinois. At hearing, claimant increased its ad damnum to $591,695.60.

At the conclusion of a lengthy hearing, during which the parties submitted a great number of exhibits, books and documents, the following stipulation was entered into by and between the attorneys for claimant and the Attorney General of Illinois representing respondent:

#### STIPULATION OF FACT

"It is hereby stipulated by and between the parties hereto, by their respective attorneys, after trial of the within cause before the Special Commissioner appointed to hear same, and upon presentation of all the evidence both oral and documentary, as follows:

"1. That the Court has jurisdiction of the parties to and the subject matter of this cause.

"2. That the complaint was brought under Chap. 37, Par. 439.8 of the Ill. Rev. Stats.

"3. That claimant is in the general contracting business, and has been

so engaged for many years last past, and has offices at 2424 North 25th Avenue, Franklin Park, Illinois.

"4. That claimant is the sole owner of the claim herein alleged against the State of Illinois, and that no other person or corporation has any interest in said claim.

"5. That, on or about August 21, 1956, claimant as a general contractor submitted to the Department of Public Works and Buildings of the State of Illinois its proposal for the general work for the Illinois Psychiatric Institute State Hospital to be erected at 1601-1659 West Taylor Street, Chicago, Illinois.

"6. Prior to the submission of said proposal, the respondent required bidders to include in same certain allowances for hardware, which allowance was included in claimant's proposal submitted August 21, 1956 to respondent.

"7. That claimant's proposal was accepted, and a contract was entered into between claimant and respondent, dated September 18, 1956, pursuant to which contract claimant agreed to do the work described therein and in the plans and specifications and other contract documents for a total contract amount of $4,259,524.00 comprised as follows:

'SCOPE OF WORK:

'Proposal No. 1 for the General Work for the Illinois Psychiatric Institute State Hospital (Eleven Story Building), 1601-1659 West Taylor Street, Chicago, Illinois, as shown on the drawings, and as specified, the sum of. .$4,297,924.00

'Proposal No. 9 for the General Work (Eleven Story Building)—in event that the electrically controlled locks for the Patients' Rooms and Stairway Doors are not installed, thus changing the special shaped door frames for these doors to standard door frames, and changing the locks to standard locks, as shown on the drawings, and as specified, except that the electrically operated locks shall be provided for Door B to Stair W, Door B to Stair N, Door B to Stair S, and Door H2 from Corridor 500 W to Public Corridor 500, in all stories from the 5th to the 11th, inclusive, is accepted and authorized, deduct the sum of............................... 43,700.00

$4,254,224.00

'Proposal No. 11 for the General Work—in event that the installation of 'Detention Screens' in lieu of 'Protective Screens' at all windows where the protective screens are indicated, as shown on the drawings, and as specified, is accepted and authorized, add the sum of. . 5,300.00

$4,259,524.00'

"8. That said contract originally provided a hardware allowance of

$168,000.00, which said amount was modified by Addendum No. 2 in the amount of $38,000.00 from said hardware allowance by the elimination of certain locks and other hardware, all as is more particularly set out in Proposal No. 9, which contained a deductive hardware allowance of $38,000.00. That the final allowance for hardware provided for under the contract documents amounted to $168,000.00 less the $38,000.00 covering the change in locks and other hardware requirements bringing the net hardware allowance under the contract documents to $130,000.00. That said net hardware allowance of $130,000.00 was the true and correct amount of same, and is the amount used by respondent in computing the hardware allowance credits and debits with respect to claimant's payments. That, claimant's claim that it is entitled to $38,000.00 because of an error of the respondent in computing the correct amount of said allowances after giving consideration to the deductive Proposal No. 9 is not supported by the evidence, and, therefore, the Court finds in favor of respondent and against claimant with respect to said claim for $38,000.00 hardware allowance alleged credit.

"9. That claimant commenced construction of the building pursuant to the plans and specifications and other contract documents, and experienced certain small delays in pouring the first floor concrete slab, which said delays were caused by contractors of respondent, but that said delays were not unreasonable, and, therefore, claimant is not entitled to reimbursement from respondent for additional costs incurred by reason of these small delays.

"10. That respondent unreasonably delayed claimant in choosing a hardware supplier, and in approving the finished hardware schedules required by the metal door frame and metal door manufacturer in order to properly and promptly manufacture said door frames and doors. That because of this delay the metal door frames and doors could not be manufactured in time to meet the progress schedule of claimant, and that this in turn interfered with the sequence of claimant's work on the interior masonry walls of the project, and in so doing decreased efficiency of performance of said work by claimant. That these delays were without fault on the part of claimant or its subcontractor, suppliers, employees or agents but solely the fault of respondent, and said delays were unreasonable in extent. That, as a result of said delays, claimant was obliged to incur additional costs for both direct and indirect labor, equipment rental expense, and overhead expenses in the total amount of $197,961.75, and is entitled to reimbursement from respondent for said amount.

"11. That during the course of the construction respondent changed the design of windows in the curtain wall of the building from center pivoted windows to double hung windows. That this change was not provided for in the plans and specifications or other contract documents on which claimant originally bid, and was not made a part of it until on or about April 26, 1957 after all the engineering and design of the curtain wall and its center pivoted windows, as originally required by the plans and specifications and other contract documents, had been completed. That because of this change, which was required by respondent, all the engineering and

detailed computations and drawings had to be re-calculated and re-drafted, and claimant lost its place in the manufacturing schedule of its supplier. The delays entailed by all of the foregoing, which were due to no fault of claimant, but due solely to the fault of respondent, caused claimant additional costs in direct and indirect labor, equipment rental expense, and overhead, all of which would not have had to have been incurred by claimant had not the change in window design from center pivoted to double hung windows been made by respondent. That these delays were unreasonable in extent, and caused change of sequence of work, and reduced efficiency in the performance thereof by claimant. That by reason of the foregoing claimant was further damaged in the amount of $125,332.57 for additional costs, which claimant had to incur because of said change of window design, which would not have had to have been incurred had there been no such change, and claimant is, therefore, entitled to be reimbursed for said additional costs in said amount by respondent.

"12. That claimant was further delayed by respondent because of several smaller changes in the plans and specifications from those provided for in the plans and specifications. That one of these delays involved the construction of an ambulance entrance canopy. That a further delay occurred when respondent decided to construct a basement passageway, and then later abandoned this proposed construction. An additional delay occurred when changes were made in the x-ray room design, which held up completion of other work in the area. A further delay occurred when respondent changed the original plans and specifications by requiring claimant to construct bases for nurses' cabinets in the nurses' stations throughout the eleven story hospital building, and a further delay was caused by respondent when it required claimant to install and construct lightweight concrete locker bases for 356 lockers made of metal. That all of the foregoing 5 delays were unreasonable, and because of same work was held up, which could have been finished earlier had not said delays occurred. That as a result claimant was obliged to incur additional expense for direct and indirect labor, equipment rental and overhead, and, since this was towards the end of the performance of the entire job, respondent was responsible for increased costs due to escalation of direct labor by reason of an increase in union rates required to be paid for same. That the work that was held up could have been performed before these rates went into effect had not such delays occurred. That none of these delays were the fault of claimant, its subcontractor, suppliers, employees or agents, but were solely caused by respondent, and said delays were unreasonable. That the additional costs incurred by claimant due to these 5 delays, which would not have had to have been incurred by it were it not for said delays, amounts to $31,210.57, and claimant is entitled to reimbursement for said amount from respondent.

"13. That, by reason of all of the above and foregoing delays, additional insurance premiums had to be paid for the total period of said delays. That the additional insurance premiums for this period of time, which had to be paid by claimant, but which would not have had to have been paid

were it not for such delays, amounts to $5,495.11. That claimant is entitled to be reimbursed by respondent for said amount.

"14. That a flood occurred in a construction project known as the Pediatric Building, which was being constructed by Pathman Construction Company, a direct contractor of respondent. That an exceptionally heavy rainfall occurred on the night of April 27, 1959 and in the early morning of April 28, 1959. That, as a result of said rainfall, a flood occurred in the Pediatric Building, flowed into the Illinois State Psychiatric Hospital, and caused certain damage therein. That respondent is not responsible to claimant for said flooding or for the damage occasioned thereby, and claimant is, therefore, not entitled to any reimbursement from the State of Illinois for said flood damage.

"15. That claimant has included in its claim additional financing costs incurred by it because of respondent's withholding of the claimant's retention money, and further for additional financing costs due to the failure of respondent to pay the claims involved in this proceeding. That claimant is not entitled to any payment from respondent for either of these items of alleged damage.

"16. That claimant performed all construction work required under the terms and conditions of the plans and specifications and other contract documents, and that said work was accepted and approved by respondent. That claimant was not reimbursed for any of the above and foregoing claims asserted by it against respondent.

"17. That, in summary, claimant is entitled to be reimbursed from respondent for the following amounts, and only those amounts:

'Expenses incurred by claimant because respondent failed to properly coordinate the approval of certain finished hardware schedules and the choosing of a supplier for such hardware, which expenses claimant would not have had to incur except for delays caused by such failure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$197,961.75

'Expenses incurred by claimant because respondent changed the design of windows from center pivoted windows to double hung windows, which claimant would not have had to incur except for delays caused by such change. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125,332.57

'Expenses incurred by claimant because of numerous changes and additions in the work to be done toward the end of the construction period, which would not have had to have been incurred except for the delay caused by such changes and additions. . . . . . . . . . . . . . . . . . . . . . . 31,210.57

Additional insurance premium expense due claimant caused by respondent's delays. . . . . . . . . . . . . . . . . . . . . . . . 5,495.11

TOTAL. . . . . . . . . . . . . . . . . . . . . . . . . . . .$360,000.00'

"It is further stipulated by and between the parties by their respective attorneys that the filing of the briefs and abstracts; and all notices with respect thereto, be and the same are hereby waived, and that a Judgment

Order be entered in the amount of THREE HUNDRED SIXTY THOUSAND, AND NO/100 ($360,000.00) DOLLARS in favor of claimant and against respondent."

Also submitted into the record by the Attorney General as a Report of the Department of Public Works and Buildings is a communication from the Director of said Department, dated May 21, 1965, which is as follows:

"Honorable William G. Clark
Attorney General
State of Illinois
160 North La Salle Street
Chicago, Illinois

Re: Claim of E. H. Marhoefer, Jr., Co. vs. State of Illinois, Illinois Court of Claims #4914

Dear Mr. Clark:

After thoroughly reviewing the above claim on an extensive examination of the facts and circumstances surrounding same and considering the evidence presented at the trial of the case involving said claim, it is hereby acknowledged that the Department of Public Works and Buildings owes the sum of $360,000.00. This amount is arrived at after eliminating all amounts claimed, except it is based on delays which we feel are actionable.

Very truly yours,

/s/ FRANCIS S. LORENZ
Director"

In view of the stipulation of the parties hereinbefore in toto set forth, supported by the Report of the Department of Public Works and Buildings hereinabove cited, it is the opinion of this Court that claimant be awarded damages in the sum of $360,000.00.